FILED

2015 Sep-28  PM 02:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM E. SHIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 5:14-cv-01433-JHE |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | | |

## MEMORANDUM OPINION[1]

Plaintiff William E. Shields ("Shields") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").  Shields timely pursued and exhausted his administrative remedies.  This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).  The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Shields was a fifty-four-year-old male at the time of the Administrative Law Judge's ("ALJ") decision.  (Tr. 20 & 34).  He completed high school through tenth grade, (tr. 34), and worked as a dump truck driver, beverage delivery driver, material handler, hand packager, and electrician helper, (tr. 55).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 13).

Shields filed his application for a period of disability, DIB, and SSI on July 8, 2011.  (Tr. 12).  The Commissioner initially denied his application, (tr. 61-62), and Shields requested a hearing before an ALJ on February 8, 2011, (tr. 115-16).  After a hearing, the ALJ denied his claim on January 14, 2013.  (Tr. 20).  Shields sought review by the Appeals Council, (tr. 5-7), but it declined his request on May 24, 2014, (tr. 1-3).  On that date, the ALJ's decision became the final decision of the Commissioner.  On July 25, 2014, Shields initiated this action.  (*See* doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance."  *Id.*

This Court must uphold factual findings supported by substantial evidence.  However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528,

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ

fails to provide the court with sufficient reasoning for determining the proper legal analysis has

been conducted, it must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-

46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of

disability, a claimant must be disabled as defined by the Social Security Act and the Regulations

promulgated thereunder.[3]  The Regulations define "disabled" as "the inability to do any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To

establish entitlement to disability benefits, a claimant must provide evidence of a "physical or

mental impairment" which "must result from anatomical, physiological, or psychological

abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic

techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is

disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed
        by the [Commissioner];
(4)     whether the claimant can perform his or her past work; and
(5)     whether the claimant is capable of performing any work in the national
        economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R.

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R.
Parts 400 to 499.

section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Shields last met the insured status requirements of the Social Security Act on December 31, 2013, and did not engage in substantial gainful activity from the amended alleged onset date of December 17, 2010. (Tr. 14). At Step Two, the ALJ found Shields has the following severe impairments: osteoarthritis of the cervical spine, degenerative disc disease of the thoracolumbar junction, degenerative joint disease of the left shoulder, and bilateral rotator cuff tendonitis/arthritis. (*Id.*). At Step Three, the ALJ found Shields does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15).

Before proceeding to Step Four, the ALJ determined Shields's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Shields has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with specified limitations. (Tr. 16). Specifically,

4

he occasionally can lift and/or carry up to 20 pounds and frequently lift and/or carry up to 10 pounds. He can stand and/or walk in combination, with normal breaks, for at least six hours during an eight-hour workday and sit, with normal breaks, for up to eight hours during an eight-hour workday. He occasionally can climb ramps and stairs and should never climb ladders, ropes or scaffolds. He frequently can balance and occasionally stoop and kneel, but never crouch and crawl. He should not be required to perform overhead work activities or reach above the shoulder level bilaterally. He occasionally can perform push/pull movements with his upper extremities. He should avoid concentrated exposure to extreme cold and working in areas of vibration. He should avoid all exposure to industrial hazards including working at unprotected heights and working in close proximity to moving dangerous machinery.

(*Id.*).

At Step Four, the ALJ determined Shields is unable to perform any past relevant work. (Tr. 18). At Step Five, the ALJ determined, based on his age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Shields could perform. (Tr. 19). Therefore, the ALJ determined Shields has not been under a disability, as defined by the Social Security Act, from December 17, 2010, through the date of the ALJ's decision, and denied his claim. (Tr. 20).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or if improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Shields alleges that the ALJ's decision should be reversed and remanded for three reasons. First, he asserts the ALJ failed to properly evaluate the credibility of his testimony of

disabling symptoms.  (Doc. 10 at 4-6).  Second, Shields argues the ALJ's reliance on Dr. John Lary's consultative opinion instead of Dr. Sherry Lewis's is inconsistent with the medical evidence, rendering her findings not supported by substantial evidence.  (*Id.* at 6-8).  Third, Shields contends the ALJ's RFC is inconsistent with the medical evidence.  (*Id.* at 8-9).

### A.  Credibility Determination

The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability.  *Id.*  However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain.  *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F.Supp. 1465, 1469 (M.D. Fla. 1990).  The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561-62.  An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence.  *Petteway v. Comm'r of Soc. Sec.*, 353 Fed. App'x. 287, 288 (11th Cir. 2009).

When evaluating the credibility of a plaintiff's statements regarding the intensity, persistence, or limiting effects of his symptoms, the ALJ considers all available subjective and objective evidence.  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); S.S.R. 96-7p.  This may include

the nature of a plaintiff's symptoms, the effectiveness of medication, his method of treatment, his activities, and any conflicts between a plaintiff's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(3) & (4), 416.929(c)(3) & (4).  In articulating reasons for discrediting subjective testimony, an ALJ need not refer to every piece of evidence in the record as long as the decision is not a broad rejection which leaves a district or appellate court unable to conclude that the medical condition was considered as a whole.  *Petteway*, 353 Fed. App'x. at 288.

Here, the ALJ concluded Shields's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but the medical evidence "does not support his allegations of severe and chronic limitations of function to the degree that it would preclude the performance of all substantial gainful activity."  (Tr. 17).  Shields alleges he has disabling pain in his back, neck, shoulders, hip, and knee, with chronic pain in his left shoulder, arm, and hand that worsens with activity.  (Tr. 16).  He asserts he can stand for only about ten or fifteen minutes before having to sit down and can only sit for thirty to forty-five minutes.  (*Id.*).  He testified he can only walk fifteen to twenty minutes at a time and, during the day, he must lie down one to one-and-a-half hours and recline for about an hour due to pain.  (*Id.*).

In support of her conclusion these allegations were not entirely credible, the ALJ notes no physician has advised Shields he must lie down or recline during the day and some of his alleged impairments have not required medical treatment during the alleged disability period.  (*Id.* at 17). She further credited Dr. Heilpern's February 2011 consultation to the extent it found Shields could perform light exertion (but discounted it to the extent it did not find certain limitations included in the RFC).  (*Id.*).  She agreed with him that no evidence supported a limitation on standing or walking.  (*Id.*).   Lastly, she credited Dr. Lary's September 2011 consultative opinion, which noted Shield's chronic low-back pain but stated Shields's "ability to sit, stand,

walk, lift, carry, bend, squat, reach with non-dominant right hand, see, hear, speak, understand, and manipulate small objects is unimpaired." (Tr. 18) (citing tr. 343-53). Shields was able to flex his upper body at the waist eighty degrees, could hyperextend fifteen degrees, and had normal straight leg raises. (*Id.*). Other than mildly restricted abduction of the left shoulder, range of motion in the arms and legs was "essentially normal." (*Id.*).

Shields contends the ALJ's findings that the medical records "fail to document a sufficient objective basis to accept [Shield]'s allegations resulting in functional limitations as wholly credible" and that he had not "required ongoing medical treatment for some of his alleged impairments at any time during the alleged period of disability" mischaracterize the evidence, which, "while not voluminous, clearly documents objective medical evidence and treatment records to support the limitations testified to by the Plaintiff." (Doc. 10 at 5) (citing tr. 17). First, he notes a February 11, 2011 x-ray of his lumbar spine documenting the presence of degenerative changes. (*Id.*) (citing tr. 300). However, two of the consultative physicians acknowledged degenerative changes and still did not find limitations to the extent Shields alleges. (Tr. 301-08 (diagnosing "degenerative changes of lumbar spine" but finding fewer limitations than the RFC) & 344-49 (noting the February 11, 2011 x-ray "indicates only presence of degenerative changes" and finding no impairment but in left-hand reaching ability).

Second, he describes a series of doctor's visits for shoulder pain in August 2011; February 2012; June 2012; and August, September, and October 2012. (Doc. 10 at 5-6) (citing tr. 383-84, 431-33, 441-42, & 444). However, the primary interventions were conservative (drugs and physical therapy) and somewhat effective. (Tr. 431 (referring to physical therapy, prescribing Lortab, and stating "partial relief from injection"), 432 (noting no radicular problems on MRI, prescribing Lortab, and referring to physical therapy), 441 (stating pain "down" and

assessment "improved" and prescribing continued Elavil and Lortab and experimenting with going on and off Mobic to test effect), 442 (prescribing Mobic, Lortab, and Elavil), 443 (finding full range of motion in shoulder, noting ineffectiveness of injection and physical therapy except for electric stimulation, and prescribing Elavil), & 444 (diagnosing shoulder pain as "likely chronic tendonitis," noting possible "drug dependence," and prescribing Lortab and Motrin). Although an MRI on June 13, 2012, showed bone spurs, it did not show any nerve compression or disc issues.  (Tr. 433).  More significant interventions do not appear in the records to which Shields cites.

Shields also cites a series of ER visits.  First is a March 20, 2011 ER visit, at which he complained of 9/10 pain; however, the doctor's notes record only the appearance of "moderate discomfort," (tr. 375); "mild" left lateral neck pain, (*id.*); and "mild tenderness on the upper left back," (tr. 376).  Ultimately, the ER doctor provided Flexeril and Ibuprofin and "encouraged [Shields] to return if worse," (tr. 376-77).  At another ER visit on December 18, 2011, Shields complained of pain at a nine on a ten points scale, but two hours later it had improved to five out of ten.  (Tr. 363).  This visit appears to contain the only reference to knee pain in the records Shields cites.  (*Id.*; tr. 369).  An x-ray was taken at that visit showing "mild" swelling suggesting bursitis but no acute fracture or significant abnormality.  (Tr. 369).  The ER gave him Lortab and told him to follow up with his doctor.  (Tr. 367).  Lastly, he points to a May 10, 2012 ER visit, at which he complained of a hip sprain and chronic shoulder pain (no reference to knee issues), for which he was provided Ibrupofin, Flexeril, and Percocet.  (Tr. 388).

The appearance of degenerative changes, bursitis and bone spurs in the medical record do not automatically indicate disabling pain.  *See Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987) (holding treating physician's diagnosis and conclusory statements of disability were not

dispositive because they "omit[ted] any discussion of why the disability makes it impossible for the claimant to be gainfully employed, or the nature or permanence of the disability").  In fact, the first of these three diagnoses was addressed by two of the consultative physicians and found to be less limiting than the RFC, (tr. 301-08 & 344-49), and the latter two were essentially treated as non-issues in the medical records Shields cites, appearing only once each and garnering little treatment, (tr. 369 & 433).

While Shields certainly presents an extensive history of shoulder pain complaints in the medical record, the ALJ acknowledges his shoulder issues and includes limitations from them in the RFC.  (Tr. 16).  Nothing Shields cites indicates more extensive limitations, inconsistent with the RFC showing shoulder limitations but not disabling pain.  Similarly, nothing Shields cites supports a contrary finding to the ALJ's conclusion that Shields had not "required ongoing medical treatment for some of his alleged impairments at any time during the alleged period of disability":  there is little reference in any of the records to which Shields points showing significant, long-term hip and knee issues.  (Tr. 388 (diagnosing "Hip Sprain") & 369 (diagnosing mild knee swelling)).

Although the history of complaints and treatment for Shield's shoulder pain lends support to his allegations about the extent of his pain, *see* S.S.R. 96-7P, they are not necessarily inconsistent with the ALJ's finding Shields has shoulder issues but his subjective statements about the effects of his pain were not entirely credible—findings which are also supported by "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Bloodsworth*, 703 F.2d at 1239.  Therefore, this Court will not "reweigh[] the evidence or substitut[e] its own judgment for that of the [Commissioner]."  *Walden v. Schweiker*, 672 F.2d at 838.

**B.  Consultative Opinions**

Shields also contends the ALJ erred when she rejected Dr. Lewis's January 18, 2011 consultative opinion.  (Doc. 10 at 6-7).  Shields notes the ALJ instead relied on Dr. Lary's September 12, 2011 opinion, which found Shields's work related activities were unimpaired, and Shields contends that, because Dr. Lary's conclusion Shields is "unimpaired" is "clearly contrary" to diagnoses of degenerative joint changes, bursitis, and bone spurs, "[t]he ALJ's reliance on the opinion . . . renders her finding not supported by substantial evidence."  (*Id.* at 7-8).

First, because both reports are from consultative and not treating physicians, there is no required level of weight.  *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) ("[T]heir opinions are not entitled to deference because as one-time examiners they were not treating physicians.").  Second, the ALJ's analysis of Dr. Lewis's examination is supported by substantial evidence.  At the examination with Dr. Lewis, Shields complained of left shoulder pain and lower back pain, (tr. 277), and Dr. Lewis's physical examination documented tenderness of his left arm and lower back, (tr. 280-81).  Ultimately, she concluded "Shields is unable to perform any activities of work."  (Tr. 282).  Dr. Lewis, however, "does not identify the reason for her opinion," (tr. 17), nor does it seem to follow from her examination, which, despite finding some tenderness in the arm and back, found only a "moderately decreased" range of motion in the back, negative straight-leg raises, and normal ambulation without a cane or assistance, (tr. 17-18) (citing tr. 277-82).  Further, when asked to squat, Shields did so "without hesitation" and only "a grimace on his face as he did so."  (Tr. 281).  Without some explanation for how these findings indicate complete disability, the ALJ did not err in giving little weight to Dr. Lewis's opinion, especially in light of the fact it is contradicted by another consultative physician's report, Dr.

11

Lary's.

On that point, Shields's argument the ALJ's opinion is not supported by substantial evidence because she relied on Dr. Lary's opinion is similarly unavailing.  First, Shields's argument essentially amounts to:  "Conditions were diagnosed; therefore, there was impairment, and Dr. Lary must be wrong to say Shields was 'unimpaired.'"  However, a diagnosis says nothing about the extent of impairment from that condition.  *See Johns*, 821 F.2d at 555.  Moreover, the ALJ's opinion explicitly did not follow Dr. Lary's opinion to the extent it did not take Shields's shoulder and back problems into account.  (Tr. 18) ("Dr. Lary did not mention the claimant's back impairment, but the [RFC] allows for a limited range of light work due to shoulder and back problems.").

Dr. Lary's examination found a "mildly restricted range of abduction of [the] left shoulder" but "otherwise essentially normal range of motion of arms and legs."  (Tr. 346).  Dr. Lary further found Shields could bend his back a full eighty degrees forward, (tr. 346), and could walk normally, heel and toe walk, and squat and rise from a kneeling position, (tr. 347).  To show Dr. Lary's conclusion is inconsistent with the medical record, Shields points to the degenerative changes in his lumbar region and left shoulder, the x-ray finding bursitis, and the MRI finding bone spurs in his neck.  (Doc. 10 at 7).  However, as previously discussed, the bursitis and bone spurs appear as mild issues in the medical record, and the existence of degenerative changes in the back and left shoulder do not necessarily mean Shields is unable to "sit, stand, walk, lift, carry, bend, squat, reach with non-dominant right hand, see, hear, speak, understand, and manipulate small objects," (tr. 347) (at which Dr. Lary found these abilities "unimpaired").  Furthermore, the ALJ limited the RFC regarding Shield's back and left shoulder and did not rely on Dr. Lary's ultimate conclusion to the extent it might have conflicted with the

medical evidence in those areas.

The ALJ's reliance on Dr. Lary's opinion to the extent it was supported by the medical evidence does not render her opinion unsupported by substantial evidence.

### C.  RFC of Reduced Range of Light Work

Finally, Shields contends the ALJ's conclusion Shields could perform a limited range of light work is not supported by the medical evidence.  (Doc. 10 at 8-9).  First, he asserts the ALJ "picks and chooses isolated notations in the record to support her decision," but he does not further explain this accusation.  (*Id.* at 8).  Next, he points to the indications in the record of lumbar degenerative changes, bursitis, moderate degenerative changes in his left shoulder, bone spurs in his neck, and the history of pain complaints and treatment.  (*Id.*).  He then cites the definition of "light work" (highlighting "a good deal of walking or standing" and that a claimant must have the ability to do "substantially all of these activities"), and states "[i]t is clear [Shields] is capable of no more than sedentary work."  (*Id.* at 8-9).

He does not explain how the medical evidence showing only mild knee swelling, (tr. 369), and an ability to walk normally and squat with only mild discomfort, (tr. 281, 347, & 375), prevents him from doing a good deal of walking or standing.  Nor does he explain why the ALJ's reduction in range from the normal definition of "light work" does not account for the issues in his back and shoulder.  The ALJ's RFC of "light work" with a reduced range to account for his clear back and shoulder limitations is supported by substantial evidence.

### VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Shields's claim for a period of disability, DIB, and SSI is **AFFIRMED** and this action is

**DISMISSED WITH PREJUDICE.**

DONE this 28th day of September 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE